**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| **WILLIAM FOX**, individually and on behalf of all others similarly situated,<br><br>**Plaintiff**<br><br>v.<br><br>**FIRST DATA MERCHANT SERVICES, LLC**<br><br>**Defendant** | **Case No.:**<br><br>**JURY TRIAL DEMANDED**<br><br>**Assigned to:** |

**CLASS ACTION COMPLAINT**

Plaintiff WILLIAM FOX ("Plaintiff"), by and through Plaintiff's counsel, and brings this action individually and on behalf of all others similarly situated against FIRST DATA MERCHANT SERVICES LLC, including as it operates doing business as FIRST DATA GLOBAL LEASING (hereinafter referred to as "Defendant"), alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

**INTRODUCTION**

1.    This class action seeks compensatory damages, restitution, disgorgement of profits, costs of suit, treble damages, attorneys' fees, declaratory judgment, injunctive relief, and any other relief that this Court deems just and proper arising from Defendant's unfair, unlawful, unethical, fraudulent, unconscionable, and/or deceptive business policies and practices related to Defendant's credit card processing services and its hidden fees and other terms.

2.    Defendant is a global payment processor engaged in the business of processing

1

credit and debit card transactions for merchants and independent sales organizations ("ISOs") who use First Data's card processing services.

3.      Plaintiff brings this case as a class action to challenge the unlawful, unfair, fraudulent, unethical, and/or deceptive policies and/or practices of Defendant related to Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent marketing, sales, and administration of its credit card processing services.

## PARTIES, JURISDICTION, AND VENUE

### A.      Plaintiff

4.      Plaintiff is a citizen of the state of Texas.  Plaintiff is a small business owner, who has been damaged as a result of Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent business practices.

### B.      Defendant

5.      Defendant First Data Merchant Services LLC ("First Data" or "Defendants") is a Florida limited liability company whose members are citizens of the state of Delaware and New York.  For purposes of jurisdiction, Defendant is, therefore, a citizen of the states of Delaware and New York.  Defendant is engaged in the credit card processing equipment lease financing and service business. Through its subsidiaries and affiliates, including but not limited to First Data Global Leasing, Defendant FDMS is also engaged in the credit card processing equipment lease financing and service business. Upon information and belief, FDMS is the affiliate, alter ego, parent and/or umbrella organization of FDGL and many other shell entities that conduct leasing operations and provide merchant card services for small businesses throughout the United States.

6.      First Data Merchant Services LLC, does business as First Data Global Leasing, which is located at 4000 Coral Ridge Drive in Coral Springs, Florida 33065.

2

7.     At all times herein mentioned, the acts and omissions of Defendant proximately caused the injuries and damages as herein alleged.

**C.     Jurisdiction and Venue**

8.     This Court has subject matter jurisdiction over this class action because:

    a.     this Court has Federal Question Jurisdiction over the claims brought under the Consumer Leasing Act, 15 U.S.C.§ 1667 *et seq.* and the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.*; and

    b.     this Court has ancillary jurisdiction over all remaining claims.

9.     This Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C.§ 1332 as amended by the Class Action Fairness Act of 2005 because:

    a.     the number of members of the proposed plaintiff class is greater than 100;

    b.     members of the plaintiff class are citizens of a State different from any Defendant;

    c.     the amount in controversy, aggregated among all individual class members, plus statutory damages and attorney's fees, exceeds $5 million.

10.     Under 28 U.S.C. 1391, venue lies in this District because:

    (a) a substantial part of the events or omissions giving rise to the claim occurred

    (b) Defendant resides in this District and each Defendant is a resident in the state in which this District is located; or

    (c) Defendant is subject to the court's personal jurisdiction with respect to the action.

**STATEMENT OF FACTS**

11.     Defendant, by and through its agents, affiliates, divisions, and joint venturers, are engaged in a state-wide predatory scheme to defraud small business owners in connection with the provision of merchant card services and the leasing and financing of associated equipment (credit card "swiping" machines).

12.     Defendant, by and through its agents, affiliates, divisions, and joint venturers, approach small business owners who may want to use, or who already use, electronic payment processing services and induce them to sign up for the Defendant's credit card processing services, promising lower rates and transaction fees to switch merchant processing service providers.

13.     First Data advertises that it "specializes in providing cost-effective options for leasing of point-of-sale equipment to support your business's long- and short-term needs and goals."[1]

14.     First Data further claims to help "[c]onserve your capital," stating that "A low monthly lease payment will allow your POS equipment to start earning for you immediately so that you can keep your focus on growing your day-to-day business."[2]

15.     First Data identifies the following Key Components, among others, of its services: "Fixed, low monthly payments help conserve capital for other business investments."[3]

16.     Defendant promises a thirty-day risk free trial, but instead lock the customer into the contract at the time of execution.  Defendant fails to disclose that the customer is locked into the contract at the time of execution.

17.     Plaintiff and the class members sign a contract consisting of a few pages, but Defendant subsequently attaches that signature, without Plaintiff or the Class Members' knowledge or consent, to a document consisting of approximately fifty (50) pages that Plaintiff nor the Class Members ever saw.

18.     Defendant uses an embedded lease, referred to internally in the company as the "preferred application", which means the Plaintiff and the Classes are only required to sign once

---

[1] https://www.firstdata.com/en_us/products/merchants/terminals-and-pos/leasing-opportunities.html
[2] https://www.firstdata.com/en_us/products/merchants/terminals-and-pos/leasing-opportunities.html
[3] https://www.firstdata.com/en_us/products/merchants/terminals-and-pos/leasing-opportunities.html

on the First Data Merchant Application and does not actually sign the First Data Global Leasing Application and instead it is essentially copied and pasted onto it by the software Defendant uses.

19.     These newly added terms include purported provisions for early termination fees, liquidated damages, liability limitations, and choice-of-law and choice-of-forum provisions.

20.     The contracts contain unconscionable provisions, including long-term leases that require the small business owner to pay wildly inflated monthly rental fees for credit card processing terminals and inflated early termination fees, and require the small business owners to personally guarantee the agreement. The agreement also authorizes Defendant to debit all payments purportedly due under the agreement, as of the date of signing or as added by Defendant at any time, directly from Plaintiff's and the classes' respective bank accounts.

21.     The agreement is a contract of adhesion.

22.     Defendant also fails to disclose hidden fees (an insurance fee and a lease fee), which are not disclosed to the consumer.

23.     The leases offered by Defendant are exorbitantly inflated and unconscionable. The Defendant leases equipment with a fair market value between $200 and $400 dollars if purchased outright. The lease payments for Class Members range between $99 and $200 dollars per month over a period of at least 48 months, so that merchants end up paying at least between $4,800 and $9,600 for the equipment. Defendant hides the actual fair market value of the equipment from the small business owners.  The exorbitant hidden lease is so high as to be unconscionable, unethical, unfair, and not reasonably related to actual cost of the machine being leased.  Such practices are unfair, unlawful, deceptive, unethical, and/or fraudulent.  This pricing discrepancy alone is enough to fall within the scope of an unfair, unethical, unconscionable, and/or deceptive practice; however, the issue is severely compounded by the Defendant's

policies and practices as to complete nondisclosure of the company's long-term, expensive, non-cancellable lease agreement.

24.     Defendant, in contrast to the industry practice of capping the amounts at which equipment can be leased based on the purchase price of the equipment, has instead charged monthly rates that have no reasonable relationship to the price of the equipment and lock merchants into four or five year leases.

25.     At the end of an FDGL equipment lease, the merchant does not even become the owner of the equipment, but rather, may purchase the equipment for an additional cost that is calculated with respect to the length of the lease. In the event that a merchant wishes to cancel before the conclusion of the lease, the merchant will owe the entirety of the remaining monthly payments on the lease in the form of one lump sum (essentially a Liquidated Damages fee), which can often total thousands of dollars.

26.     To add insult to injury, Defendant fails to disclose that the lease is a "non-cancelable agreement" and that the only way to get out the lease is to pay First Data another astronomical cancellation fee – essentially a Liquidated Damages clause.

27.     Once Plaintiff signs the initial paperwork, Defendant electronically debits Plaintiff's bank accounts for higher-than disclosed processing rates, inflated rental fees, and other charges which Defendant, at Defendant's sole discretion and without approval, adds to the leasing contract and/or the merchant processing agreement.

28.     Defendant's inflated, undisclosed and/or unauthorized withdrawals include, but are not limited to: (a) unconscionable and/or hidden equipment lease fees; and (b) an "LDW" ("loss damage waiver") fee, which purports to provide what is in fact illusory insurance coverage for the "leased equipment."

29.     As part of the process of entering into the lease, small business owners are required to provide banking information and to give permission to the Defendant to debit lease payments automatically from the individual and businesses' respective bank accounts. At the time that this consent is given, the individual/small business owner is unaware that Defendant will use this consent to unilaterally take not only the agreed upon and highly inflated lease payments, but also any additional sums that the Defendant opts, at Defendant's discretion, to take from the account. Defendant claims that these payments represent additional fees authorized by the leases the small business owners have signed, but in many cases, these fees are contained on pages not shown to the merchant, but rather fraudulently added to the lease after the small business owner has already signed the original one-page lease, or even on pages on which the merchant's signature has been forged.

## PLAINTIFF SPECIFIC FACTS

30.     Defendant promised Plaintiff that Plaintiff could substantially reduce Plaintiff's costs for credit card processing if Plaintiff agreed to enter an agreement with Defendant and an associated lease for Plaintiff's credit card processing equipment.  At the time, Plaintiff was using a different merchant service provider for electronic payment transactions.

31.     Based upon Defendant's material omissions and/or unfair, deceptive, unlawful, and/or fraudulent policies and/or practices, Plaintiff executed a written agreement with Defendant for credit card processing systems.

32.     Defendant slammed Plaintiff into the unfair, unethical, deceptive, fraudulent, and/or unlawful equipment lease and insurance LDW program that Plaintiff did not provide informed consent to enroll into.

33.     Plaintiff has, therefore, been damaged.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings these claims individually and on behalf of all other similarly situated persons pursuant to Rule 23(a)(b2), (b3)and (c4) of the Federal Rules of Civil Procedure.

35.     The Class is defined as follows:

> All persons and entities in the United States who paid First Data (a) a lease fee for credit card processing equipment and/or (b) an insurance LDW fee.

36.     The Sub-Class is defined as:

> All persons and entities in Texas who paid First Data (a) a lease fee for credit card processing equipment and/or (b) an insurance LDW fee.

37.     Excluded from the Classes are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or Defendant's respective parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) Any governmental entities and any instrumentalities, subdivisions, agencies thereof; (4) any person who executes and files a timely request for exclusion from the Class; (5) any person who has had their claims in this matter finally adjudicated and/or otherwise released; (6) the legal representatives, successors and assigns of any such excluded person; (7) Counsel of record.

38.     The Class and Sub-Class are collectively referred to as the "Classes."

39.     Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

40.     **Numerosity.  Fed. R. Civ. P. 23(a)(1).** While Plaintiff does not know the exact number of class members, Plaintiff believes there are (at least) thousands of members in each Class.  Undoubtedly, individual joinder in this case is impracticable.  More than one thousand class members is sufficient to satisfy numerosity under Fed. R. Civ. P. 23(a)(1).  Class Members can be easily identified through Defendant's records data base.

8

41.     **Commonality and Predominance.  Fed. R. Civ. P. 23(a)(2) and (b)(3)**. There are several questions of law and fact common to the claims of Plaintiff and Members of the Classes. All of the Members of the Classes' claims are based upon the same facts and circumstances. Fed. R. Civ. P. 23(a)(3). The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual Members of the Classes. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Classes.  Common questions include, but are not limited to, the following:

a.      Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly misrepresented the terms of the agreement;

b.      Whether Defendant unfairly, unethically, unlawfully, falsely, fraudulently, deceptively, misleadingly, unconscionably, and/or confusingly induced Plaintiff and the Members of the Classes into signing the agreement based on omissions, misrepresentations, and/or false promises;

c.      Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly omitted that the hidden lease fee costs 20 times more than the actual cost of the terminal being leased;

d.      Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly omitted that the lease fee is not reasonably related to the actual cost of the equipment being leased;

e.      Whether the Defendant engages in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices by failing to adequately disclose that the lease was non-cancellable and subject to lease cancellation fee that equals the cost of the remainder of the contract;

f.      Whether the lease cancellation fee is an unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent liquidated damages clause;

g.      Whether Defendant's marketing, sales, and/or other business practices are unfair, deceptive, unlawful, fraudulent, unconscionable, and/or unethical;

h.      Whether Plaintiff and the Classes are entitled to compensatory, actual, and/or statutory damages as a result of Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent conduct;

i.     Whether Defendant violated the Consumer Lease Act;

j.     Whether Defendant unfairly, unlawfully, unconscionably, fraudulently, falsely, and/or deceptively failed to inform class members of the exorbitant rates for leasing equipment;

k.     Whether Defendant violated the consumer protection statutes of the various states;

l.     Whether Defendant concealed material facts in its advertising materials and agreement and/or failed to adequately disclose to Plaintiff material facts;

m.    Whether Defendant have engaged in deceptive acts or practices in connection with the sales, marketing, and/or administration of its services;

n.     Whether Defendant breached one or more agreements with Plaintiff and the Class Members;

o.     Whether Defendant were unjustly enriched;

p.     Whether Defendant's agreement is unconscionable and/or contain unconscionable provisions;

q.     Whether Plaintiff and the Classes are entitled to treble damages, punitive damages, and/or other monetary relief;

r.     Whether Plaintiff and the Classes are entitled to injunctive, declaratory relief, or other equitable relief.

42.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. The claims of Plaintiff are typical of the claims of the respective Classes. The claims of the Plaintiff and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the respective Classes. Plaintiff and all members of the Classes are similarly affected by Defendant's wrongful conduct and were damaged in the same way.

43.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes because Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiff falls within each class definition and Plaintiff's interests do not conflict with the interests of the Members of the Classes Plaintiff

seeks to represent.  Plaintiff is passionate about this litigation personally and will prosecute this action vigorously for the benefit of the Members of the Classes.  Plaintiff is represented by experienced and able attorneys from coordinated law firms.  Plaintiff is represented by counsel who are competent and experienced in the prosecution of class action litigation, and Plaintiff's counsel intends to prosecute this action vigorously for the benefit of the Members of the Classes. Plaintiff and class counsel can fairly and adequately protect the interests of all of the Members of the Classes.  Neither Plaintiff nor their counsel have any interest adverse to those of the other Members of the Classes.

44.     **Superiority.  Fed. R. Civ. P. 23(b)(3)**: Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

45.     The litigation without the classes would allow litigation claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions.  Individual litigation of each Member of the Classes' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Without the class action vehicle, the Classes would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this

Complaint, and Defendant would be permitted to retain the proceeds of its violations of law. Absent a class action, most of the respective Members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

46.     **Injunctive and Declaratory Relief is Appropriate.  Fed. R. Civ. P. 23(b)(1).** The prosecution of separate actions by individual members of the classes would create a risk of:

a.     Inconsistent or varying adjudications with respect to individual members of the respective classes which would establish incompatible standards of conduct for the Defendant; and

b.     Adjudications with respect to individual members of the respective classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

47.     **Policies Generally Applicable to the Classes.   Fed. R. Civ. P. 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to the classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to each of the Classes as a whole. Defendant's practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinge on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

48.     **Certification of Particular Issues.  Fed. R. Civ. P. 23(c)(4).**  Issue certification

is also appropriate because the following particular issues (among others) exist that may be brought or maintained as a class action:

    a.    Whether Defendant had a policy, practice, or software program that affixes Plaintiff and the Class's signature to a second agreement;

    b.    Whether Defendant had a policy, practice, or software program that affixes Plaintiff and the Class's signature to a second agreement is unconscionable, unfair, deceptive, fraudulent, unethical, and/or deceptive;

    c.    Whether Defendant's liquidated damages clause ("cancellation fee") is reasonably related to the actual damage to Defendant when a Plaintiff terminates services;

    d.    Whether Defendant's lease equipment fee is unconscionable, unfair, deceptive, fraudulent, unethical, and/or deceptive;

    e.    Whether Defendant's insurance LDW fee is unconscionable, unfair, deceptive, fraudulent, unethical, and/or deceptive;

    f.    Whether Defendant violated the consumer protection statutes of the various states;

    g.    Whether Defendant breached one or more agreements with Plaintiff and the Class Members;

    h.    Whether Defendant's agreement is unconscionable and/or contain unconscionable provisions;

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT / BREACH OF THE COVENANT
### OF GOOD FAITH AND FAIR DEALING

(On Behalf of Plaintiff and All Classes)

49.    Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

50.    Plaintiff and Defendant have contracted for merchant card services.  As described throughout the Complaint, the actions taken by Defendant has violated the specific terms of the agreement with its customers.

51.     Defendant is liable for the losses of Plaintiff and the Classes that have resulted from Defendant's breaches of the parties' contractual agreement.

52.     Defendant breached the express terms of the agreement by charging Plaintiff and the Classes more than what was agreed to.

53.     Defendant additionally violated the Agreement by instituting a range of practices that were never disclosed to customers nor agreed to.

54.     Fees resulting from such practice changes were neither "reasonable" nor subject to "reasonable notice" as required by the Agreement.  These secretive practices included, but are by no means limited to:

      a.      the hidden lease fee;

      b.      the hidden insurance / LDW waiver fee; and/or

      c.      the cancellation fee.

55.      Additionally, under the laws of the states where Defendant does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

56.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may

consist of inaction, and fair dealing may require more than honesty.  Examples of violations of good faith and fair dealing are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

57.     Defendant has breached the covenant of good faith and fair dealing through its policies and practices as alleged herein.  For example, to the extent Defendant argues that it was allowed to impose equipment lease fees, insurance LDW fees, and/or cancellation fees, it will be shown that such an interpretation of the contract violates the covenant of good faith and fair dealing.  The covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

58.     Plaintiff and the Classes have performed all, or substantially all, of the obligations imposed on them under the agreement.

59.     Plaintiff and members of the Classes have sustained damages as a result of Defendant's breaches of the agreement and/or as a result of Defendant's breaches of the agreement as modified by the covenant of good faith and fair dealing.

## COUNT II
## VIOLATION OF STATE STATUTES
## PROHIBITING UNFAIR AND DECEPTIVE
## ACTS AND PRACTICES
(On Behalf of Plaintiff and All Classes)

60.     Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

61.     The state deceptive trade practices acts were enacted by the various states to protect consumers from unfair, unconscionable, and deceptive business practices.

62.     Certain of Defendant's policies and/or practices described in this Complaint

constitute unfair, unconscionable, unlawful, unethical, and/or deceptive trade or business practices. Defendant engages in such conduct as a general business practice, uniformly and as a matter of policy, assessing and collecting equipment lease fees, insurance LDW fees, and/or cancellation fees where it is not legally permitted to do so.

63.     In addition, Defendant has done so through substantially aggravating circumstances in which it intentionally and knowingly engaged in this unlawful practice that was targeted and directed at small businesses – the heart of America.

64.     As a result of the unfair, unlawful, unethical, unconscionable, fraudulent, and/or deceptive collection of the equipment lease fees, insurance LDW fees, and/or cancellation fees, Plaintiff and the Classes have been harmed and Defendant has been improperly and unjustly enriched.

65.     Defendant's policies and practices are substantively and procedurally unconscionable in the following ways, among others:

a.     Defendant unilaterally imposes the hidden equipment lease fees, hidden insurance LDW waiver fees, and cancellation fees;

b.     Defendant did not obtain affirmative informed consent from the persons and/or consumers prior to enrolling Plaintiff and the Classes;

c.     Defendant does not provide the terms and conditions until after Plaintiff and the Classes have been enrolled;

d.     The written documents eventually provided to Plaintiff and the Classes, if any, do not provide Plaintiff and the Classes with sufficient information to understand the terms and conditions of the program;

e.      The written documents eventually provided, if any, along with other written materials in the possession of Defendant, are contracts of adhesion in that they are standardized forms, imposed and drafted by Defendant, which is a party of vastly superior bargaining strength, and only allows the customer the opportunity to adhere to them or reject them entirely;

f.      Plaintiff lacked a meaningful chose in the negotiation of the contract;

g.      these documents are ineffective, ambiguous, deceptive, unfair, unconscionable, and misleading in that they do not require affirmative consent (like a signature);

h.      the amount charged in fees for the lease equipment, the insurance LDW waiver, and/or the cancellation fee is not rationally related to the cost of the same;

i.      the terms and conditions are unreasonably favorable to Defendant;

j.      Defendant uses an embedded lease, referred to internally in the company as the "preferred application", which means the Plaintiff and the Classes are only required to sign once on the First Data Merchant Application and does not actually sign the First Data Global Leasing Application and instead it is essentially copied and pasted onto it by the software Defendant uses; and

k.      the purported agreements are ambiguous, deceptive, unfair, unethical, unlawful, unconscionable, fraudulent and/or misleading to any extent they allowed Defendant to perpetrate the grossly improper acts described herein.

66.      Considering the great business acumen and experience of Defendant in relation to Plaintiff and the members of the Classes, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose

and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

67.     Plaintiff and members of the Classes have sustained damages as a result of Defendant's policies and practices as alleged herein.

68.     Defendant's policies and practices constitute violations of the various state consumer protection acts, including, but not limited to: **Alabama**: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 *et seq.*); **Alaska**: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 *et seq.*); **Arizona**: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 *et seq.*); **Arkansas**: the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. §4-88-101 *et seq.*); **California**: the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*), the California Unfair Business Practices Act (California Business & Professions Code §17200, *et seq.*), and the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*); **Colorado**: the Colorado Consumer Protection Act (Colo. Rev. Stat. §6-1-101 *et seq.*); **Connecticut**: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a *et seq.*);  **Washington, D.C.**: the Consumer Protection Procedures Act (D.C. Code Ann. §28-3901 *et seq.*); **Florida**: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 *et seq.* (West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 *et seq.* (West)); **Georgia**: Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 *et seq.*); the Fair Business Practices Act (Ga. Code Ann. §10-1-390 *et seq.*); and the False Advertising Statute (Ga. Code Ann. §10-1-420 *et seq.*); **Hawaii**: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §480 *et seq.*) and the Uniform Deceptive Trade Practice Act (Hawaii Rev. Stat. §481A *et seq.*); **Idaho**: the Idaho Consumer Protection Act (Idaho Code §48-601 *et seq.*); **Illinois**: the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill.

Comp. Stat. Ann. §505/1 *et seq.* (Smith Hurd)) and the Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. Ann. 510/1 *et seq.* (Smith Hurd)); **Indiana**: the Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 *et seq.* (Burns)); **Iowa**: the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16, *et seq.* (West)); **Kansas**: the Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 *et seq.*); **Kentucky**: the Consumer Protection Act (Ky. Rev. Stat. §367.110 *et seq.*); **Louisiana**: the Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §51:1401, *et seq.* (West)); **Maine**: the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 §206 *et seq.*) and the Uniform Deceptive Trade Practices Act (Me. Rev. Stat. Ann. Tit. 10 §1211 *et seq.*); **Maryland**: the Maryland Consumer Protection Act (Md. Com. Law Code Ann. §§13-101 *et seq.*, 14-101 *et seq.*); **Massachusetts**: the Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A, *et seq.*); **Michigan**: the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. §445.901 *et seq.*) and the Michigan Pricing and Advertising Act (Mich. Comp. Laws Ann. §445.351 *et seq.*); **Minnesota**: the Consumer Fraud Act (Minn. Stat. Ann. §325 F. 69, *et seq.*); the False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F. 67. *et seq.*); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.44, *et seq.*); and the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13, *et seq.*); **Mississippi**: the Consumer Protection Act (Miss. Code Ann. §75-24-1 *et seq.*) and the False Advertising Statutes (Miss. Code Ann. §97-23-3, *et  seq.*); **Missouri**: the Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010 *et seq.*);  **Montana**: the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-101 *et seq.*); and the Statutory Deceit Statute (Mont. Code Ann. §27-1-712, *et seq.*); **Nebraska**: the Nebraska Consumer Protection Act (Neb. Rev. Stat. §59-1601 *et seq.*) and the Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat. §87-301 *et seq.*); **Nevada**: the Deceptive Trade Statutes (Nev. Rev. Stat. §§598.0903 *et seq.*, 41.600 *et seq.***); New**

**Hampshire**: the Regulation of Business Practices for Consumer Protection Act (N.H. Rev. Stat. Ann. §358-A:1 *et seq.*); **New Jersey**: the New Jersey Consumer Fraud Act (N.J. Stat. Ann. §56:8-1 *et seq.* (West)); **New Mexico**: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 *et seq.*); **New York**: New York Consumer Protection Act (N.Y. Gen. Bus. Law §§349, 350, *et seq.* (Consol.)); **North Carolina**: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 *et seq.*); **North Dakota**: Deceptive Act or Practice Statutes (N.D. Gen. Stat. §51-15-01 et. seq.); **Ohio**: Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 *et seq.* (Baldwin)); **Oklahoma**: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 *et seq.* (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 *et seq.* (West)); **Oregon**: the Unlawful Trade Practices Act (Or. Rev. Stat. §646.605 *et seq.*) and the Oregon Food and Other Commodities Act (Or. Rev. Stat. §616.005 *et seq.*); **Pennsylvania**: Unfair Trade Practices Act and Consumer Protection Law (Pa. Stat. Ann. Tit. 73 §201-1 *et seq.* (Purdon); **Rhode Island**: Consumer Protection Act (R.I. Gen. Law §6-13.1-1 *et seq.*); **South Carolina**: South Carolina Unfair Trade Practices Act (S.C. Code Ann. §39-5-10 *et seq.*); **South Dakota**: South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 *et seq.*); **Tennessee**: Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 *et seq.*); **Texas**: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41 *et seq.* (Vernon)); **Utah**: Utah Consumer Sales Practices Act (Utah Code Ann. §13-11-1 *et seq.*) and the Utah Truth in Advertising Act (Utah Code Ann. §13-11a-1 *et seq.*); **Vermont**: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 *et seq.*); **Virginia**: Virginia Consumer Protection Act (Va. Code 59.1-196 *et seq.*); **Washington**: Washington Consumer Protection Act (Wash. Rev. Code Ann. §19.86 *et seq.*); **West Virginia**: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 *et seq.*);

20

**Wisconsin**: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 *et seq.* (West));

**Wyoming**: Consumer Protection Act (Wyo. Stat. §40-12-101 *et seq.*).

69.     These violations have directly, foreseeably, and proximately caused damages to Plaintiff and the Classes in amounts yet to be determined. They have also unjustly enriched Defendant by an amount yet to be determined.

70.     As a result of Defendant's violations of the Deceptive Trade Practices Acts of the various states prohibiting unfair and deceptive acts and practices, Plaintiff and members of the Classes have suffered actual damages for which Defendant is liable in an amount up to and equal to threefold damages. Plaintiff and the Classes are likewise entitled to recover by disgorgement an amount sufficient to restore to Plaintiff and the Classes all monies improperly taken from them. In addition, Plaintiff and the Classes are entitled to injunctive relief to prevent Defendant from continuing to harm them through its wrongful actions and conduct.

**COUNT III**
**VIOLATION OF CONSUMER LEASING ACT**
(On Behalf of Plaintiff and All Classes)

71.     Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

72.     The lease entered into between Defendant and the Plaintiff Class, including Plaintiff, failed to disclose the payment schedule and total amount of periodic payments.

73.     The lease entered into between Defendant and the Plaintiff Class, including Plaintiff, failed to disclose the total amount of other charges payable to the lessor.

74.     The lease entered into between Defendant and the Plaintiff Class, including Plaintiff, failed to disclose the total of payments, with a description such as "the amount you will have paid by the end of the lease."

75.    The lease entered into between Defendant and the Classes, including Plaintiff, failed to make a statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term.

76.    The lease entered into between Defendant and the Classes, including Plaintiff, failed to disclose that the contract prohibited any termination for any reason prior to the end of the lease period.

77.    The lease entered into between Defendant and the Classes, including Plaintiff, failed to disclose the rent and other charges, paid by the lessee and required by the lessor as an incident to the lease transaction, with a description such as "the total amount of rent and other charges imposed in connection with your lease [state the amount]."

78.    The lease entered into between Defendant and the Classes, including Plaintiff, failed to disclose the total dollar amount for all official and license fees, registration, title, or taxes required to be paid in connection with the lease.

79.    Plaintiff and members of the Classes are entitled to the actual damage sustained as a result of the Defendant's failure to comply with the Consumer Leasing Act, statutory damages, calculated as 25% of the total periodic lease payments, but no less than $100 or greater than $1,000 per class member, and attorney's fees and costs.

**COUNT IV**
**UNJUST ENRICHMENT**
(On Behalf of Plaintiff and All Classes)

**(IN THE ALTERNATIVE TO COUNTS I AND II)**

80.    Plaintiffs individually, and on behalf of the Plaintiff Class, reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

81.     Defendant received a benefit from Plaintiffs and members of the Classes when they inequitably received the equipment lease fees and insurance LDW fees from Plaintiff and the Classes.

82.     Plaintiffs and members of the Plaintiff Class were injured by having to pay well above market value to Lease the equipment in an amount that is not reasonably related to the actual cost of the equipment and/or the insurance LDW fees that in no way are reasonably related to the cost to insure the leased equipment.

83.     Defendant was unjustly enriched by its unlawful actions resulting in damages to the Plaintiffs and members of the Plaintiff Class.

**COUNT V**
**CONVERSION**
(On Behalf of Plaintiff and All Classes)

84.     Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

85.     Defendant had, and continues to have, a duty to withdraw only those amounts agreed to by Plaintiff and the Classes and to prevent their diminishment through wrongful acts.

86.     Defendant has wrongfully collected equipment lease fees and insurance LDW fees from Plaintiff and the members of the Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

87.     Defendant has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Classes, without legal justification.

88.     Defendant continues to retain these funds unlawfully without the consent of Plaintiff or members of the Classes.

89.     Defendant intends to permanently deprive Plaintiff and the members of the Classes of these funds.

90.     These funds are properly owned by Plaintiff and the members of the Classes, not Defendant, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the Classes.

91.     Plaintiff and the members of the Classes are entitled to the immediate possession of these funds.

92.     Defendant has wrongfully converted these specific and readily identifiable funds.

93.     Defendant's wrongful conduct is continuing.

94.     As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Classes have suffered, and continue to suffer, damages.

95.     By reason of the foregoing, Plaintiff and the members of the Classes are entitled to recover from Defendant all damages and costs permitted by law, including all amounts that Defendant has wrongfully converted.

## COUNT VI
## VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT AND REGULATIONS SUCH AS 15 U.S.C. § 1693 AND 12 C.F.C. § 205

### (On Behalf of Plaintiff and All Classes)

96.     Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

97.     Section 907(a) of the EFTA, 15 U.S.C. §1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

98.     Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

99.     Section 205.l0(b) of Regulation E, 12 C.F.R. § 205.l0(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."

100.    Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." Id. at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." Id. At ¶10(b), comment 6.

101.    In multiple instances, Defendant has debited the bank accounts of Plaintiff and members of the Classes on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers from the accounts of Plaintiff members of the Classes, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

102.    In multiple instances, Defendant has debited bank accounts of Plaintiff and members of the Class on a recurring basis without providing a copy of a written authorization signed or similarly authenticated by Plaintiff or the putative Class members for preauthorized electronic fund transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demands a jury trial on all claims so triable and judgment as follows:

A.      Declaring Defendant's marketing, sales, and administration of its merchant card services and lease rental program (including affixing Plaintiff and the Classes' signatures to a second agreement without their consent), and charging a lease equipment fee, insurance LDW fee, and/or cancellation fee that are in no way reasonably related to the actual cost to the Defendant, as well as the other policies and practices described herein to be violative of the agreement, wrongful, unconscionable, unfair, deceptive, unlawful, unethical, and/or fraudulent and in violation of common law and various statutory laws;

B.      Awarding restitution of all fees at issue paid to Defendant by Plaintiff and the Classes as a result of the wrongs alleged herein in an amount to be determined at trial;

C.      Compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

D.      Awarding actual damages in an amount according to proof;

E.      Awarding punitive and exemplary damages;

F.      Awarding treble damages pursuant to the various state's unfair and deceptive trade practices acts;

G.      Awarding statutory damages;

H.      Awarding pre-judgment interest at the maximum rate permitted by applicable law;

I.      Reimbursing all costs and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law and the contract(s) with Defendant; and

26

J.      Awarding such other relief as this Court deems just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: August 15, 2017                              By: <u>/s/ John A. Yanchunis</u>
                                                    John Yanchunis
                                                    **MORGAN & MORGAN**
                                                    **COMPLEX LITIGATION GROUP**
                                                    201 N Franklin St, 7th Floor
                                                    Tampa, Florida 33602
                                                    Telephone: 813-275-5272
                                                    Facsimile: 813-226-5402
                                                    Email: jyanchunis@forthepeople.com

                                                    **ATTORNEYS FOR PLAINTIFF AND THE**
                                                    **PROPOSED CLASSES**