UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 17-cv-80949-Middlebrooks/Brannon

WILLIAM FOX, individually and
on behalf of all others similarly situated,

        Plaintiff,

v.

FIRST DATA MERCHANT SERVICES, LLC,

        Defendant.
_____/

# STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS II AND III OF THE AMENDED COMPLAINT

Defendant First Data Merchant Services, LLC ("First Data"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Southern District of Florida Local, hereby submits the following Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment on Counts II and III of the Amended Complaint (DE 19). First Data offers in support the Declaration of Edward Quaranta (**Ex.1**, "Quaranta Decl.") and Sheldon A. Philp (**Ex. 2**, "Philp Decl.") and the exhibits attached thereto.

WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

*Attorneys for Defendant*
*First Data Merchant Services, LLC*

1. First Data provides credit and debit card processing services to merchants through thousands of independent sales organizations ("ISOs") that support those merchants, as well as directly to merchants themselves. **Ex. 1** (Quaranta Decl.) ¶¶ 4, 39.

2. Merchants who sign up for First Data's processing services also often lease the card "swiping" machines used to accept and submit card payments for processing. **Ex. 1** (Quaranta Decl.) ¶¶ 24-29.

3. Plaintiff is the owner and principal of Fox Marketing Company ("Fox Marketing"). **Ex. 2-A** (Fox Depo. Tr.) at 10, 13).

4. Fox Marketing is located in Abilene, Texas, and sells, refurbishes and repairs computers, as well as electronic cigarettes. **Ex. 2-A** (Fox Depo. Tr.) at 10, 13).

5. Plaintiff has been accepting credit cards for about 32 years in his business, and has been dealing with a credit card terminal for about 25 years. **Ex. 2-A** (Fox Depo. Tr.) at 12-13).

6. Plaintiff met in Texas with a sales representative from an ISO—Securus Payments—which offered Fox Marketing a new deal that "bundled" processing fees with a $120 monthly leasing fee. **Ex. 2-A** (Fox Depo. Tr.) at 41-42, 65-66; **Exs. 2-B, 2-C, 2-D, 2-H.**

7. Securus reviewed billing statements from Fox Marketing's processor at the time, Flagship Merchant Services, and presented a worksheet representing the new "bundled" charge would be less than what Fox Marketing was paying to Flagship. **Ex. 2-A** (Fox Depo. Tr.) at 41-42, 65-66; **Exs. 2-C, 2-M**.

8. After accepting the Securus offer, Plaintiff signed and initialed in multiple places lease documents disclosing prominently and repeatedly that the lease is non-cancellable. **Ex. 2-A** (Fox Depo. Tr.) at 87-89, 134; **Exs. 2-E, 2-G, 2-I**; DE 46 at 8-9.

9. Plaintiff signed or initialed every page of the Merchant Processing Application and Agreement ("MPAA"), thereby certifying that the total monthly charge to lease the equipment was $120 without "taxes, late fees, or other charges that may apply" and was instructed to "See Lease Agreement in Program Guide for details." **Ex. 2-E**; DE 46 at 9.

10. Plaintiff also certified that he "has received a copy of the Program Guide and Confirmation Page, which is part of the Merchant Processing Application . . . and by this reference incorporated herein" and that he knew that the "signature page also serves as a signature page to the Equipment Lease Agreement and the TeleCheck Services Agreement appearing in the Third Party Section of the Program Guide." **Ex. 2-E**; DE 46 at 9.

11. By signing the MPAA, Plaintiff expressly agreed to the Equipment Lease Agreement contained within the Program Guide. **Ex. 2-E**; DE 46 at 9.

12. Plaintiff also signed the Confirmation Page, which explicitly cited to the section of the Program Guide that contained the Equipment Lease Agreement and stated in bold "THIS IS A NON-CANCELABLE LEASE FOR THE FULL TERM INDICATED." **Ex. 2-G**; DE 46 at 9.

13. By signing the Confirmation Page, Plaintiff certified that he had received, had read, and had agreed "to all terms in the Program [Guide]" which included the Equipment Lease Agreement. **Ex. 2-G**; **Ex. 2-A** (Fox Depo. Tr.) at 59; DE 46 at 9-10.

14. Plaintiff also signed a Delivery and Acknowledgement Form stating the term of the lease was for 4 years and certifying again (i) that he "received a copy of [the] Equipment Lease Agreement"; (ii) that he "read and [understood] the terms and conditions of the Equipment Lease Agreement"; and (iii) that he "underst[oo]d that [the] lease is NON-CANCELABLE for the full term." **Ex. 2-I**; DE 46 at 10.

15. The Equipment Lease Agreement itself, on pages 44 and 45 of the Program Guide, states that the signature page in the MPAA serves as the signature page to the Equipment Lease Agreement, and notes in Section 1.2(b) that "THIS IS A NON-CANCELABLE LEASE FOR THE TERM INDICATED." **Ex. 2-F**; DE 46 at 10.

16. The Equipment Lease Agreement provides that if Plaintiff defaults "in any material respect in the performance . . . of any provision" of the agreement or if there is any default by the Plaintiff "under a processing agreement with [First Data] or with an affiliate or joint venture to which [First Data] is a party," including "early termination of the [MPAA]," First Data has the right to "accelerate and declare immediately due and payable all monthly lease charges for the remainder of the applicable lease period together with the fair market value of the Equipment (as determined by [First Data]), not as a penalty but as liquidated damages for [First Data's] loss of the bargain." **Ex. 2-F** at 45, § 1.12(a)-(b); DE 46 at 13-14.

17. Plaintiff has not purchased a lease buyout to get out of the Equipment Lease Agreement earlier than the full term. **Ex. 2-A** (Fox Depo. Tr.) at 118.

18. Plaintiff knew from the beginning the make and model of the POS equipment he would lease, "that there would be a $120 fee per month to lease the equipment" and the price "was not a surprise" to him. **Ex. 2-A** (Fox Depo. Tr.) at 59; **Ex. 2-J**.

19. Plaintiff easily found the retail price of the POS equipment on the Internet within a week of receiving the equipment. **Ex. 2-A** (Fox Depo. Tr.) at 97-99.

20. Plaintiff states he called Securus to cancel the lease agreement within a week of having the equipment. **Ex. 2-A** (Fox Depo. Tr.) at 25, 49-50).

21. When Fox Marketing received its first Securus bill, Plaintiff noticed the processing fees were less than it was paying with Flagship. **Ex. 2-A** (Fox Depo. Tr.) at 25.

22. The average monthly processing fees paid by Fox Marketing under the Securus contract was approximately $160 less than prior processor Flagship's fees. **Ex. 1** (Quaranta Decl.) ¶ 22.

23. Plaintiff conceded he would not have been "misled" if the amount of Fox Marketing's combined processing, lease and EPP fees are less than what it was paying with Flagship. **Ex. 2-A** (Fox Depo. Tr.) at 100-101.

24. First Data's records show the average monthly fees paid by Fox Marketing under the Securus contract including the leasing and EPP fees are *less* than its prior processor Flagship. **Ex. 1** (Quaranta Decl.) ¶ 22 and **Ex. 1-A** and **Ex. 1-B** thereto.

25. Plaintiff decided that "with the lease not being cancelable," Plaintiff would "stay with the processing through the terms of the lease and then cancel everything." **Ex. 2-A** (Fox Depo. Tr.) at 64.

26. The express terms of the Equipment Lease Agreement required Plaintiff to "keep the Equipment adequately insured against loss by fire, theft, and all other hazards" and that First Data could charge Plaintiff a fee for failing to get such insurance. **Ex. 2-F** at 44; DE 46 at 10-11.

27. First Data sent Plaintiff a Welcome Letter offering Plaintiff the option to either (i) enroll in First Data's Equipment Protection Program ("EPP"), which would "satisfy the insurance requirement" of the lease agreement, or (ii) get his own insurance and provide proof of such to First Data. **Ex. 2-L** at FD1C-0127202; **Ex. 2-A** (Fox Depo. Tr.) at 104, 106-107; DE 46 at 11.

28. The Welcome Letter disclosed to Plaintiff in bolded letters "FDGL offers coverage for you starting as low as $4.95 a month, fixed for the term of your lease." **Ex. 2-L** at FD1C-0127200.

29. Plaintiff enrolled in the EPP, agreed to pay the EPP fee and does not dispute the amount.  **Ex. 2-A** (Fox Depo. Tr.) at 110-111, 129.

30. To date, Plaintiff continues to pay the EPP fee with his lease payment and has not made a claim under the EPP.  **Ex. 2-A** (Fox Depo. Tr.) at 110-111, 129.

Dated:  February 20, 2018

Respectfully submitted,

WHITE & CASE LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131-2352
Telephone: (305) 371-2700
Facsimile: (305) 358-5744

By:     *s/ Jaime A. Bianchi*
     Jaime A. Bianchi
     Florida Bar No. 908533
     jbianchi@whitecase.com

     James N. Robinson
     Florida Bar No. 0608858
     jrobinson@whitecase.com

     Sheldon A. Philp
     Florida Bar No. 020123
     sphilp@whitecase.com

*Counsel for Defendant First Data Merchant Services, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 20, 2018, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By:     *s/ Jaime A. Bianchi*
     Jaime A. Bianchi

AMERICAS 94183990